IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J. D. JORDAN, *Pro se*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-03316 |
| | § | |
| ROBERT FLEXTON, MARION | § | |
| ALONSO, CATHERINE CALLAWAY, | § | |
| JEANNE BURKE, CLINT FREELAND, | § | |
| HENRY JONES, AND DYNEGY, INC., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 12(B)(6) AND MEMORANDUM IN SUPPORT**

Joseph A. Fischer, III
Texas Bar No. 00789292
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
Email: tfischer@jw.com

Jay K. Wieser
State Bar No. 24060826
Jackson Walker L.L.P.
777 Main Street, Suite 2100
Fort Worth, TX 76102
(817) 334-7200
(817) 334-7290 – Fax
Email: jwieser@jw.com

**ATTORNEYS FOR DEFENDANTS**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................1

TABLE OF AUTHORITIES ...........................................................................................................2

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................3

    A. The "Short-Swing" Profit Rule ...........................................................................3

    B. The Dynegy Equity Compensation Awards and Approvals ...................................4

    C. The Dispositions Were Approved Tax Withholdings ..............................................5

    D. The Complaint ......................................................................................................7

III. ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT ...................................7

IV. STANDARD OF REVIEW ...............................................................................................8

V. ARGUMENT AND AUTHORITIES ................................................................................9

    A. Jordan Has Failed to Show that There Were any Non-Exempt "Sales" of Dynegy Stock Subject to Section 16(b) ...............................................................10

        1. The Dispositions to Dynegy to Pay Tax Obligations Are Exempt under Rule 16b-3(e) Because They Were Authorized Dispositions to the Issuer. ...........................................................................................10

        2. Specific Approval of Each of the Dispositions Was Not Required Because the Committee Previously Approved the SUA Agreements and the 2012 LTI Plan. ..........................................................12

    B. The Dispositions Are Not "Sales" Under Section 16(b) ........................................13

CONCLUSION AND PRAYER ...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abely v. Aeterna Zentaris Inc.*,
   No. 12-CV-4711, 2013 WL 2399869 (S.D.N.Y. May 29, 2013) ............................................. 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 8

*At Home Corp. v. Cox Commc'ns, Inc.*,
   446 F.3d 403 (2d Cir. 2006) ................................................................................................. 14

*Beddall v. State St. Bank & Trust Co.*,
   137 F.3d 12 (1st Cir. 1998) .................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 8

*Donoghue v. Casual Male Retail Grp., Inc.*,
   427 F. Supp. 2d 350 (S.D.N.Y. 2006) .................................................................................. 12

*Donoghue v. Patterson Companies, Inc.*,
   990 F. Supp. 2d 421 (S.D.N.Y. 2013) .................................................................................... 9

*Eaves v. Designs for Fin., Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011) .................................................................................... 8

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
   423 U.S. 232 (1976) ............................................................................................................. 13

*Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*,
   298 F.3d 136 (2d Cir. 2002) ................................................................................................. 11

*Halebian v. Berv*,
   631 F. Supp. 2d 284 (S.D.N.Y. 2007) *aff'd in part, vacated in part on other
   grounds by* 644 F.3d 122 (2d Cir. 2011) ................................................................................ 9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 544 (S.D.N.Y. 2014) .................................................................................... 9

*Kern Cnty. Land Co. v. Occidental Petroleum Corp.*,
   411 U.S. 582 (1973) ....................................................................................................... 13, 14

*Klein ex rel. SICOR, Inc. v. Salvi*,
   No. 02-CV-1862, 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004), *aff'd sub nom.*,
   *Klein v. Salvi*, 115 F. App'x 515 (2d Cir. 2004) .................................................................... 1

*Levy v. Sterling Holding Co., LLC*,
  544 F.3d 493 (3d Cir. 2008) ................................................................................................... 13

*Malin v. XL Capital Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ........................ 3

*Mercer v. Gupta*,
  712 F.3d 756 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 319 (2013) ...................................... 8, 13

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
  763 F.3d 198 (2d Cir. 2014) ..................................................................................................... 8

*Sun River Energy, Inc. v. McMillan*,
  3:13-cv-2456-D, 2014 WL 4771852 (N.D. Tex. Sept. 25, 2014) ............................................. 9

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) .................................................................................................... 4

## FEDERAL STATUTES

15 U.S.C. § 78p(a) ........................................................................................................................... 3

§ 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ................................... passim

## RULES

Fed. R. Civ. P. 12 ..................................................................................................................... passim

Rule 201 of the Federal Rules of Evidence ..................................................................................... 8

Fed. R. Civ. P. 56 ......................................................................................................................... 4, 9

## REGULATIONS

17 C.F.R. § 240.16b-3 ............................................................................................................ passim

61 Fed. Reg. 30376-01 ................................................................................................................... 10

## OTHER

*Pinnacle West Capital Corp.*, SEC No–Action Letter, 1992 WL 59852, at *3, *9
  (Mar. 25, 1992) ....................................................................................................................... 12

Defendants Robert Flexon,[1] Mario Alonso,[2] Catherine Callaway James,[3] Carolyn Burke,[4] Clint Freeland, and Henry Jones (collectively, the "Officers") and Dynegy Inc. ("Dynegy") file this Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum in Support (the "Motion"), and respectfully show the Court the following:

## I. INTRODUCTION

Plaintiff J. D. Jordan ("Jordan"), a purported shareholder of Dynegy Inc. ("Dynegy"), asserts that the Officers earned profits from routine equity compensation transactions that Jordan alleges were "short-swing" sales under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Section 16(b)").  Based on an odd, incorrect argument, Jordan seeks to recover $191,539 in so-called "short-swing insider trading profits" allegedly realized by the Officers.[5] (Compl. ¶¶ 2, 17).  Jordan's claims are meritless and should be dismissed because the Securities and Exchange Commission ("SEC") expressly has exempted transactions of the kind that form the basis of Jordan's claims from Section 16(b).

---

[1] The Complaint misspells Mr. Flexon's name as "Flexton."

[2] The Complaint misspells Mr. Alonso's first name as "Marion."

[3] The Complaint omits Mrs. James's married surname.

[4] The Complaint misnames Ms. Burke as "Jeanne."

[5] Before filing his Complaint, Jordan, who is not a lawyer, improperly attempted to extract a $20,000 "consulting fee" from Defendants for his own personal gain in exchange for not proceeding with a threatened lawsuit. (Letter from J. D. Jordan dated June 27, 2016 attached to this Motion as Exhibit A to the Feb. 17, 2017 Declaration of Heidi D. Lewis ("Lewis Decl.").)  But "[s]uccessful plaintiffs in section 16(b) suits are not personally entitled to receive any portion of the recovered damages." *Klein ex rel. SICOR, Inc. v. Salvi*, No. 02-CV-1862, 2004 WL 596109, at *1 (S.D.N.Y. Mar. 30, 2004), *aff'd sub nom.*, *Klein v. Salvi*, 115 F. App'x 515 (2d Cir. 2004).  Even after the Complaint was filed, Mr. Jordan continued to seek a "consulting fee equal to 12%" from Dynegy and indicated that disgorgement (the true remedy for proper claims under section 16(b)) would be left to the discretion of Dynegy's General Counsel (Mrs. James). (Email from J. D. Jordan dated February 3, 2017, attached as Exhibit R to the Lewis Decl.)

Jordan is a serial, vexatious litigant. Over the past two years alone, Jordan and his "consultant," John Olagues, have filed at least 19 lawsuits alleging various violations of securities laws, most of which seek to recover "short-swing insider trading profits" from various companies and individuals under Rule 16b based on arguments similar to the incorrect argument he makes here. Their strategy is obvious:  Extract nuisance settlements from defendants who pay them rather than incur a greater amount in defense costs even though their arguments and interpretations are meritless.  The vast majority of these lawsuits are dismissed shortly after they are filed.

Aimed at preventing unfair use of inside information, Section 16(b) requires that profits realized by a director, officer, or principal shareholder of a company from any purchase and sale, or any sale and purchase, of that company's equity securities within a period of less than six months be disgorged to the company. 15 U.S.C. § 78p(b). The SEC, however, exempts categories of transactions that it determined do not provide an opportunity for speculative abuse. For example, SEC Rule 16b-3 provides that Section 16(b) does not apply to transactions in which a director or officer acquires equity securities from the company, or disposes of equity securities to the company, because neither the company nor the director or officer is considered to be at an information disadvantage. *See* 17 C.F.R. § 240.16b-3.

Here, Jordan complains about transactions carried out solely between the Officers and Dynegy. Jordan alleges that dispositions of Dynegy restricted stock units the Officers made to Dynegy to cover tax withholding liability in connection with stock grants they received under equity compensation stock grants (the "<u>Dispositions</u>") constituted "sales" subject to Section 16(b). (Compl. ¶¶ 2, 9.) Next, Jordan attempts to "match" the Dispositions to other purchases and alleges that, in combination, the Officers realized profits that are required to be disgorged under Section 16(b). (*Id.* ¶¶ 2, 4, and 9.) However, not only did the Dispositions not involve an opportunity for the type of speculative abuse that Section 16(b) was meant to prevent, the Dispositions are expressly exempt from Section 16(b) under the plain language of Rule 16b-3(e). *See* 17 C.F.R. § 240.16b-3(e). Jordan's allegations and claims are meritless and the Complaint should be dismissed because Jordan has failed to state a claim that the Officers' dispositions of Dynegy stock were non-exempt "sales" within the scope of Section 16(b). Jordan's claims thus fail as a matter of law and should be dismissed.

## II. FACTUAL BACKGROUND

A.  The "Short-Swing" Profit Rule

Section 16(b) of the Exchange Act requires that directors, officers and principal shareholders (*i.e.*, corporate insiders) who realize profits "from any purchase and sale, or any sale and purchase, of any equity security" of their own company (*i.e.*, the issuer) within a period of less than six months must disgorge those profits to the company. 15 U.S.C. § 78p(b). The purpose of this "short-swing" profit rule is to "prevent[] the unfair use of information which may have been obtained by [corporate insiders] by reason of [their] relationship to the issuer." *Id*. Congress granted the SEC authority to exempt from the statute's restriction "any transaction or transactions" that the SEC deems to be "not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b). Pursuant to that authority, the SEC promulgated Rule 16b-3 to exempt any "transaction between the issuer . . . and an officer or director of the issuer that involves issuer equity securities," as long as certain conditions are met. 17 C.F.R. § 240.16b-3(a). Specifically, a disposition of equity securities to the issuer is exempt as long as the terms of the disposition are approved in advance by the issuer's board of directors, a committee of the board, or by a majority of shareholders. 17 C.F.R. §§ 240.16b-3(d) & (e).

Section 16(a) requires directors, officers, and principal shareholders to disclose, subject to rules set forth by the SEC, their ownership holdings of equity securities of the company, and any changes thereto. 15 U.S.C. § 78p(a). Non-exempt transactions, and transactions exempt from Section 16(b) pursuant to Rule 16b-3(d) & (e), that result in a change in ownership of the company's equity securities by a director, officer or principal shareholder are required to be disclosed within two business days on an SEC Form 4, which is filed with the SEC under penalty of perjury. *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 133 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009). The nature of each transaction reportable on a Form 4 filing is

disclosed using standard transaction codes set by the SEC. For example, transaction code "F" means "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3." (Form 4 Instructions at 6, attached as Exhibit B to the Lewis Decl.)[6]

**B.     The Dynegy Equity Compensation Awards and Approvals**

On its emergence from Chapter 11 bankruptcy in 2012, Dynegy enacted a long term incentive compensation plan (the "2012 LTI Plan"). (2012 LTI Plan, attached as Exhibit C to the Lewis Decl.) The 2012 LTI Plan was approved by Dynegy's shareholders on September 10, 2012,[7] and authorized the granting of restricted stock unit awards and other forms of equity compensation transactions to Dynegy employees and directors. (Ex. C, 2012 LTI Plan at I.) The 2012 LTI Plan further authorized Dynegy to "deduct in connection with all Awards any taxes required by law to be withheld and to require any payments required to enable it to satisfy its withholding obligations." (*Id*. at XV.(c).)

Pursuant to the 2012 LTI Plan, the Compensation and Human Resources Committee (the "Committee") of Dynegy's Board of Directors (the "Board") granted the Officers equity compensation in the form of restricted stock unit awards (the "RSU Awards"). (Lewis Decl. ¶ 3.) The terms and conditions of the RSU Awards are set forth in individual stock unit award

---

[6] The materials cited in and attached to the Lewis Decl. are central to Jordan's claims and thus need not be considered outside the pleadings for purposes of Rule 12(b)(6). *E.g., Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (explaining that when a complaint's factual allegations are expressly linked to and dependent upon a document, the document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)); *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Of course too, the Court can convert this motion to a Rule 56 motion. Fed. R. Civ. P. 12(d).

[7] Dynegy's Joint Plan of Reorganization was confirmed by the United States Bankruptcy Court for the Southern District of New York on September 10, 2012. (Order Confirming the Joint Chapter 11 Plan of Reorganization for Dynegy Holdings, LLC and Dynegy Inc., entered on September 9, 2010, attached as Exhibit D to the Lewis Decl.) The confirmation of Dynegy's Joint Plan of Reorganization "constitute[d] all necessary approval" by Dynegy's stockholders of the 2012 LTI Plan. (Ex. C, 2012 LTI Plan at 7.)

agreements (the "SUA Agreements"), which were filed with the SEC, and were approved by the Committee annually. (*Id*.; Stock Unit Award Agreement, attached as Exhibit E to the Lewis Decl.; Minutes of the Compensation and Human Resources Committee Meeting of the Board of Directors of Dynegy Inc. dated Mar. 18, 2013, Mar. 3, 2014, Mar. 2, 2015, and Mar. 1, 2016, attached as Exhibit F to the Lewis Decl.)  Each restricted stock unit represents a contingent right to receive one share of Dynegy common stock, and the restricted stock units generally vest in three cumulative installments on the first, second, and third anniversary of the respective grant date. (*See* Ex. E, Stock Unit Award Agreement at ¶ 2.) With respect to the withholding of taxes, the SUA Agreements provide that the employee must deliver money to Dynegy to meet the withholding requirements, "and if the Employee fails to do so, [Dynegy] is authorized to withhold from any cash or stock remuneration (including withholding any Stock Units distributable to the Employee under this Agreement) then or thereafter payable to the Employee any tax required to be withheld by reason of such resulting compensation income." (*Id*. at ¶ 6.)

**C.     The Dispositions Were Approved Tax Withholdings**

The Dispositions of Dynegy stock about which Jordan complains all arose from Dynegy's withholding of restricted stock units to pay the taxes applicable to the vesting of restricted stock units pursuant to the 2012 Plan and the SUA Agreements. (Lewis Decl. ¶ 2.)

For example, Jordan's Complaint identifies three dispositions of stock made by Dynegy's CEO, Mr. Flexon: (1) a March 18, 2015 disposition of 8,000 restricted stock units; (2) an October 29, 2015 disposition of 13,108 restricted stock units[8]; and (3) a March 18, 2016 disposition of 9,081 restricted stock units. Jordan then asserts that these transactions were not

---

[8] While the October 29, 2015 was a single disposition of 13,108 restricted stock shares (as evidence by the Form 4 filed in connection with that transaction) (Ex. H, Flexon Nov. 2, 2015 Form 4), the Complaint breaks the October 29, 2015 disposition into two separate transactions of 10,000 shares and 3,180 [sic], presumably for "matching" purposes. (*See* Compl. ¶ 9.)

properly approved or exempted from Section 16(b). (Compl. ¶¶ 9, 13.) However, these transactions were exempt from Section 16(b) by the plain language of Rule 16b-3(e).

In each instance, the dispositions were designated in a Form 4 filed with the SEC as a "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise, or vesting of a security issued in accordance with Rule 16b-3," using transaction code "F." (Form 4s filed with the SEC on Mar. 20, 2015, Nov. 2, 2015, and Mar. 22, 2016 on behalf of Mr. Flexon, attached as Exhibits G, H, and I, respectively, to the Lewis Decl.) The same Form 4s also provided additional detail regarding the dispositions. Specifically, the Form 4 filed in connection with the March 18, 2015 disposition explains that the "restricted stock units were withheld by Issuer [Dynegy] to pay the taxes applicable to the vesting of 21,645 units of restricted stock on March 18, 2015." (Ex. G, Flexon Mar. 20, 2015 Form 4.) The Form 4 filed in connection with the October 29, 2015 disposition similarly explains that "[t]hese restricted stock units were withheld by the issuer to pay the taxes applicable to the vesting of 35,093 units of restricted stock on October 29, 2015." (Ex. H, Flexon Nov. 2, 2015 Form 4.) And the Form 4 filed in connection with the March 18, 2016 disposition explains that "[t]hese restricted stock units were withheld by the Issuer to pay the taxes applicable to the vesting of 21,645 units of restricted stock on March 18, 2016." (Ex. I, Flexon Mar. 22, 2016 Form 4.) In each transaction, the disposition price of the restricted stock units withheld for tax withholding reflected the Dynegy stock price on the date the units vested and were withheld. (Exs. G, H, and I.)

The same is true for the other Dispositions identified in Jordan's Complaint with respect to the other Defendants: Mr. Alonso, Mrs. James (Callaway), Ms. Burke, Mr. Freeland, and Mr. Jones. (Lewis Decl. ¶ 4; Form 4s filed with the SEC: on Mar. 5, 2015 and Mar. 20, 2015 on behalf of Mr. Alonso; on Mar. 5, 2015 and Mar. 20, 2015 on behalf of Mrs. James; on Mar. 5,

2015 and Mar. 20, 2015 on behalf of Ms. Burke; on Mar. 20, 2015 on behalf of Mr. Freeland; and on April 3, 2015 on behalf of Mr. Jones, attached as Exhibits J to Q, respectively, to the Lewis Decl.) That is, the Form 4s filed in connection with each of the dispositions identified in the Complaint for those Officers bore the transaction code "F" (meaning that they were the payment of tax liability incident to the vesting of a security issued in accordance with Rule 16b-3), and further stated that the restricted stock units disposed of were withheld by Dynegy to pay the taxes applicable to the vesting of restricted stock. (*Id*.)

**D.     The Complaint**

Following his unsuccessful attempts to extract a "consulting fee" from Dynegy (*see* n.5 *infra*), Jordan filed his complaint on November 9, 2016 (Dkt. No. 1) alleging that "there was no proper approval . . . and no exemptions from Section 16 b" for the dispositions identified in his Complaint. (Compl. ¶ 13.) The Complaint states that Jordan's "information and belief" concerning those transactions "is based on, among other things, the SEC Form 4s" disclosing the relevant dispositions. (*Id*. ¶ 10.) The Complaint also asserts that "none of the dispositions to the issuer were 'automatic' as required to achieve an exemption under 16 b-3(e) as the approval documents give the choice of the payment of tax liability to the insider with the issuer having no discretion." (*Id*. ¶ 14.)

### III.  ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT

The legal and factual bases for Defendants' Motion and the issues to be decided are:

1. Jordan's Section 16(b) claims against Defendants should be dismissed because the Dispositions are exempt under Section 16(b)-3(e) as pre-approved dispositions to Dynegy.

2. Alternatively, Jordan's Section 16(b) claims against Defendants should be dismissed because the Dispositions were made pursuant to equity compensation plans and are not the type of dispositions that Section 16(b)'s restrictions are meant to restrict.

## IV. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must construe a complaint liberally and "accept[] all factual allegations as true," it need not give "effect to legal conclusions couched as factual allegations," *Mercer v. Gupta*, 712 F.3d 756, 758-59 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 319 (2013) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)), and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

In addition to the factual allegations in the complaint, on a motion to dismiss the Court may consider (1) documents attached to or incorporated by reference in the complaint; (2) documents "integral" to the complaint and relied upon in it; (3) disclosure documents filed with the SEC; (4) facts of which judicial notice may be taken pursuant to Rule 201 of the Federal Rules of Evidence; or (5) "documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (citations omitted). Moreover, where a plaintiff must make a demand on a company before commencing suit (as is the case with Section 16(b)), courts also consider any demand letters and company

responses. *See Halebian v. Berv*, 631 F. Supp. 2d 284, 294 (S.D.N.Y. 2007) *aff'd in part, vacated in part on other grounds by* 644 F.3d 122 (2d Cir. 2011). Further, courts "routinely take judicial notice of Form 4 filings at the motion to dismiss stage, and consider them for the truth of their contents." *Abely v. Aeterna Zentaris Inc.*, No. 12-CV-4711, 2013 WL 2399869, at *22 (S.D.N.Y. May 29, 2013) (internal citation omitted). Finally, to the extent necessary, this motion may be treated as one for summary judgment as provided in Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

## V. ARGUMENT AND AUTHORITIES

"To state a claim for disgorgement of short-swing profits under Section 16(b), a plaintiff must allege: (1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's equity securities (2) within a six-month period (3) by a statutory insider." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014) (citing *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998)); *Sun River Energy, Inc. v. McMillan*, 3:13-cv-2456-D, 2014 WL 4771852 at *6 (N.D. Tex. Sept. 25, 2014) (citing *Gwozdzinsky*, 156 F.3d at 308). Thus, "[t]o plead a plausible claim for a violation of Section 16(b), plaintiff must plead facts sufficient to show that there is the purchase and sale (or sale and purchase) of a security not otherwise exempt from Section 16(b)." *Donoghue v. Patterson Companies, Inc.*, 990 F. Supp. 2d 421, 424 (S.D.N.Y. 2013) (citing *Gwozdzinsky*, 156 F.3d at 308-09); *see also* 15 U.S.C. § 78p(b) ("[Section 16(b)] shall not be construed to cover any transaction . . . which the [S.E.C.] shall by rules and regulations [] exempt.").

Jordan's Complaint fails because he fails to state a claim under Section 16(b). Although dispositions were made within six months of purchases, Jordan has failed to show that these were non-exempt "sales." Nor could he. The Form 4 filings on which Jordan's Complaint expressly

relies establish that these purported "sales" of Dynegy shares that Jordan seeks to match with the purchases were exempt by Rule 16b-3(e) as pre-approved dispositions to Dynegy. Moreover, the Dispositions were made pursuant to equity compensation plans and are not the type of dispositions that Section 16(b)'s restrictions are meant to restrict.

A. **Jordan Has Failed to Show that There Were any Non-Exempt "Sales" of Dynegy Stock Subject to Section 16(b)**

    1.    <u>The Dispositions to Dynegy to Pay Tax Obligations Are Exempt under Rule 16b-3(e) Because They Were Authorized Dispositions to the Issuer.</u>

As long as the terms are approved in advance by the issuer's board of directors, a committee of the board, or shareholders, Rule 16b-3(e) "exempt[s] dispositions of issuer equity securities to the issuer pursuant to … the right to have securities withheld, or to deliver securities already owned, either in payment of the exercise price of an option or to satisfy the tax withholding consequences of an option exercise or the vesting of restricted securities." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release Nos. 34-37260, 35-26524, 61 Fed. Reg. 30376-01 (June 14, 1996); 17 C.F.R. §§ 240.16b-3(d) & (e).

Under Rule 16b-3, an issuer such as Dynegy is free to approve through its shareholders, board of directors, or a committee of the board, either "each specific transaction" or "a plan pursuant to which the terms and conditions of each transaction are fixed in advance." 17 C.F.R. § 240.16b-3 n.3. And, this specifically includes plans which call for the disposition of shares through withholding for taxes:

> Where the terms of a subsequent transaction (such as the exercise price of an option, *or the provision of an* exercise or *tax withholding right*) are provided for in a transaction as initially approved . . . such subsequent transaction shall not require further specific approval.

*Id.* (emphasis added); *Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145-46 (2d Cir. 2002) ("So long as the relevant securities transaction is between an issuer and insider, and … the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation.").

Here, the Dispositions were properly approved and thus were exempt "sales" under Section 16(b). The terms of the Dispositions, which coincided with the vesting of restricted stock units, were set and governed by the SUA Agreements, which were approved by the Committee, and the 2012 LTI Plan, which was approved on Dynegy's emergence from bankruptcy. (Lewis Decl. ¶ 3; Exs. C to F.) The SUA Agreements authorized Dynegy to "withhold from any cash or stock remuneration (including withholding any Stock Units distributable to the Employee under this Agreement) then or thereafter payable to the Employee any tax required to be withheld by reason of such resulting compensation income." (Ex. E, Stock Unit Award Agreement at ¶ 6.) And, as indicated on the Form 4s filed with respect to the transactions, that is exactly what happened; all of the Dispositions complained of constituted the "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise, or vesting of a security issued in accordance with Rule 16b-3," an SEC exemption to Section 16(b). (Lewis Decl. ¶ 4; Exs. G to Q.)

Indeed, the information disclosed in the SEC filings on which Jordan relies establish that the Dispositions were routine, pre-approved transactions between the Officers and Dynegy arising from equity compensation awards, and thus exempt under Rule 16b-3(e).

### 2. Specific Approval of Each of the Dispositions Was Not Required Because the Committee Previously Approved the SUA Agreements and the 2012 LTI Plan.

While the Complaint is less than clear, Jordan appears to assert that the Dispositions are not exempt under Rule 16b-3(e) because each individual disposition was not subsequently (and separately) approved by the Board at the time the individual disposition occurred. (*See* Compl. ¶¶ 13-14.) Jordan's argument appears to advance the novel position that Rule 16b-3(e) does not exempt withholding transactions unless the withholding is "automatic" in that the insider *must* pay the tax with shares and cannot elect to pay the tax with cash instead.[9]

But Jordan's assertion directly contradicts Rule 16b-3 and the SEC's notes explaining it, which state that: "Where the terms of a subsequent transaction (such as the exercise price of an option, *or the provision of an* exercise or *tax withholding right*) are provided for in a transaction as initially approved [by the Board], such subsequent transaction shall not require further specific approval." 17 C.F.R. § 240.16b-3 n.3.  Indeed, similar arguments have been soundly rejected. *See Donoghue v. Casual Male Retail Grp., Inc.*, 427 F. Supp. 2d 350, 356 (S.D.N.Y. 2006) (stating that "the fact that Jewelcor could … choose among a certain number of ways of paying the exercise price" did not "place[] the Option Agreement beyond the scope of Rule 16b–3 exemption" and "[t]hus where the board of directors approved the grant of an option, including the provision of a withholding right, the board need not approve the subsequent exercise of the option and the related withholding of the shares to exercise the option."); *see also Pinnacle West*

---

[9] This argument appears to stem from Jordan's misinterpretation of SEC Compliance and Disclosure Interpretation 123.16 (May 23, 2007), which states that: "Approval of a grant that by its terms provides for automatic reloads would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis.  The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right." (*See* Compl. ¶15.) In doing so, Jordan confuses the *issuer's* discretion with the *insider's* discretion.  Indeed, what CDI 123.16 actually means is that specific approval by the board or committee would be required *only* where the *issuer* (*i.e.*, Dynegy) has been given discretion, not where the Section 16 *officer* is given discretion to elect net share withholding instead of cash tender as the method to be used to satisfy tax withholding obligations.  Moreover, Jordan admits that the issuer, Dynegy, has "no discretion" with regard to the withholding obligations (Compl. ¶ 14); thus, even if CDI 123.16 were relevant, it would not remove the Dispositions from Rule 16b-3(e)'s exemption.

*Capital Corp.*, SEC No–Action Letter, 1992 WL 59852, at *3, *9 (Mar. 25, 1992) (finding that a plan that granted options for which payment of the exercise price could be made by check, in shares of common stock, or in a combination thereof satisfied the exemption requirements of former (arguably more stringent) Rule 16b–3(c)(2)(ii)).

In sum, because the withholding provisions in the SUA Awards and the 2012 LTI Plan were duly approved in advance by the Committee, no further approval was required and the transactions are exempt under Rule 16b-3(e).

B.   **The Dispositions Are Not "Sales" Under Section 16(b)**

Even if the Dispositions did not fall squarely within the exemption of Rule 16b-3(e), and they absolutely do, the Dispositions would not constitute "sales" for Section 16(b) purposes because they were not the type of transactions that "may serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information." *Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 594-95 (1973).

In enacting Section 16(b), "Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well informed investors." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243 (1976); *see Mercer*, 712 F.3d at 757-58 (Section 16(b) "is designed to prevent statutory insiders … from engaging in speculative transactions on the basis of information not available to others" (internal quotation marks and citation omitted)).[10] Thus, "[i]n deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve

---

[10] In promulgating Rule 16b-3, the SEC also recognized that "the purchase of securities from, or sale of securities to, the issuer by a director or officer does not present the same informational asymmetry, and associated opportunity for speculative abuse, that, according to the Supreme Court, Congress was targeting in enacting section 16(b)." *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 505 (3d Cir. 2008).

as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information." *Kern Cnty. Land Co.*, 411 U.S. at 594-95. When a corporate insider engages in an "involuntary transaction … having no access to inside information," Section 16(b) does not apply because such a transaction does not create the potential for speculative abuse. *At Home Corp. v. Cox Commc'ns, Inc.*, 446 F.3d 403, 408 (2d Cir. 2006). In addition to being expressly exempt by Rule 16b-3, the Dispositions also meet this test.

Here, the Dispositions were made following the terms of equity compensation that the Committee and Dynegy's Board—not the Officers—determined in advance. With respect to all of the Dispositions, the Officers are not alleged to have had any control over the time of the transaction, the amount of the tax payment made to Dynegy, or the price at which the restricted stock units were disposed. Those amounts were determined at the time of vesting based on the terms of the Officers' equity compensation awards that were set when the compensation was granted, years before.

Moreover, "issuer-insider transactions, where both parties have the benefit of 'insider' information, are not comprehended within the purpose of Section 16(b)," which is to "prevent[] insiders from taking advantage of 'information not available to others.'" *Roth ex rel. Beacon Power Corp.*, 522 F.3d 242, 249 (2d Cir. 2008) (citation omitted). The Dispositions simply did not create any plausible opportunity for abusive trading and thus were not "sales" under Section 16(b).

## **CONCLUSION AND PRAYER**

Because Jordan has failed to state a claim upon which relief may be granted under Section 16(b), the Complaint should be dismissed with prejudice.

Dated:  February 21, 2017                                Respectfully submitted,

                                                              By: */s/ Joseph A. Fischer, III*
                                                                   Joseph A. Fischer, III
                                                                   Texas Bar No. 00789292
                                                                   Jackson Walker L.L.P.
                                                                   1401 McKinney, Suite 1900
                                                                   Houston, Texas 77010
                                                                   (713) 752-4200
                                                                   (713) 752-4221 (Fax)
                                                                   Email: tfischer@jw.com

                                                                   Jay K. Wieser
                                                                   State Bar No. 24060826
                                                                   Jackson Walker L.L.P.
                                                                   777 Main Street, Suite 2100
                                                                   Fort Worth, TX  76102
                                                                   (817) 334-7200
                                                                   (817) 334-7290 – Fax
                                                                   Email:  jwieser@jw.com

                                                              **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      I hereby certify that on February 21, 2017, a copy of the foregoing document was filed electronically using the Court's Electronic Case Filing System. I also hereby certify that a copy of the foregoing document was served on the Plaintiff by facsimile to (504) 737-3854, by electronic mail to jdsgold@gmail.com, and by U.S. First Class mail to the following address:

J. D. Jordan
Box 23866
New Orleans, LA 70183

                                            */s/ Jay K. Wieser*
                                            Jay K. Wieser