United States District Court
Southern District of Texas
FILED

MAR 0 6 2017

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
Houston Division

J. D. JORDAN, Pro se,
a shareholder of Dynegy Inc

Plaintiff

-v-

| | |
|---|---|
| Robert Flexon C, Pres. and CEO | Private Right of Action |
| Marion Alonso...EVP | under Section 16 b |
| Catherine Callaway...EVP & Gen. Counsel | of the Securities Act of 1934 |
| Jeanne Burke...EVP | Civil Action No   4:16-CV-03316 |
| Clint Freeland... Ex V.P. and CFO | |
| Henry Jones....EVP | |
| Dynegy INC | |

Defendants

**Plaintiff"s Response to 12 b-6 Motion by Defendants**

1. First of all it must be stated that it is unclear whether the attorneys here are representing all named defendants or just the officer and director defendants. This suit has its purpose to recover profits on behalf of the company Dynegy Inc. from the officer and director defendants earned in violation of Section 16 (b) of the 1934 Securities Act. It would be improper for the same attorneys to represent both the violators of Section 16 (b) and the party receiving the recovery of the profits from the violations.

1

2. This suit rises under Section 16 (b) of the 1934 Securities and Exchange Act which makes any profits made by officers, directors or greater than 10% owners from a buy and a sale (or a sale and a buy) of equity securities within less than 6 months, recoverable by the issuer. However if either the buy or sale is a transaction "not comprehended within the purpose of Section 16 (b)" and it's terms are approved consistent with the requirements of SEC Rule 16 b-3, Note 3 and Rule 16 -b(3)(d)(1) and ((d)(2), that transaction is exempt from 16 b) and can not be matched with any other transaction for section 16 (b) purposes.

3. This is a strict liability suit, where no showing of intent or knowledge is required to be demonstrated by the plaintiff.

**Facts**

4. The information illustrated below for Mr Flexon, Mr Alonso, Jeanne Burke, Catherine Callaway, Mr. Freeland and Mr. Jones, comes from their Form 4 filings with the SEC. The officers and directors made the transactions below, which is conceded by attorneys for the attorneys for these officers and directors.

**Robert Flexon...President and CEO**

| Common Stock Purchased | Date | Price | Common Stock Disposed of To the issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 10,000 | 3/1/2016 | $10.08 | 10,000 | 10/29/2015 | $19.46 | $93,800 |
| 3,180 | 11/13/2015 | $16.70 | 3,180 | 10/29/2015 | $19.46 | $8,776 |
| 8,000 | 8/12/2015 | $22.91 | 8000 | 3/18/2015 | $28.84 | $47,440 |

Total .......... $150,016

**Mario Alonso... EVP**

| Common Stock Purchased | Date | Price | Common Stock Disposed of To the Issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 656 | 8/14/2015 | $25 | 656 | 3/3/2015 | $27.24 | $1,469 |
| 445 | 8/14/2015 | $25 | 445 | 3/18/2015 | $28.84 | $1,708 |

Total ............$3,177

**Catherine Callaway EVP and General Counsel**

| Common Stock Purchased | Date | Price | Common Stock Disposed of To the issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 1579 | 8/13/2015 | $24.38 | 1579 | 3/18/2015 | $28.84 | $7,042 |
| 921 | 8/18/2015 | $24.38 | 921 | 3/3/2015 | $27.24 | $2,634 |

Total……….$9676

**Jeanne Burk EVP**

| Common Stock Purchased | Date | Price | Common Stock Disposed To the issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 1480 | 8/18/2015 | $25.66 | 1480 | 3/18/2015 | $28.84 | $4,760 |
| 1285 | 8/18/2015 | $25.66 | 1285 | 3/3/2015 | $27.24 | $2,030 |

Total……….$6790

**Clint Freeland EVP and CFO**

| Common Stock Purchased | Date | Price | Common Stock Disposed of To the issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 2,000 | 8/13/2015 | $24.5 | 2000 | 3/18/2015 | $28.84 | $8,680 |

**Henry Jones EVP**

| Common Stock Purchased | Date | Price | Common Stock Disposed of To the issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 3000 | 8/18/2015 | $25.90 | 3000 | 4/1/2015 | $30.30 | $13,200 |

==================================================================

Combined Total Profit…………$191,539

5. It is conceded by attorneys for the defendants that all of the defendants named above were subject to Section 16 (b) as they were officers or directors when their transactions were executed.

6. All of the sale/dispositions of common stock to the issuer Dynegy Inc were made within less than 6 months of the indicated market purchases of common stock by the officers or directors. The specific information of the transaction are derived from the SEC Form 4 filed by the officers and directors. This is conceded by attorneys for the defendants. All of the matched transactions made the indicated profits recoverable by Dynegy Inc, unless the sale/dispositions of common stock were exempt from 16 (b).

7. The only question that is not conceded by the attorneys for the officers or directors is that the dispositions of shares to the issuer by the officers or directors were not exempt from Section 16 b). The attorneys claim they were.

8. Plaintiff can find nothing in the Long Term Incentive Plan of 2012 that was attached to their 12 b-6 Motion which describes the choices available to the officer or director when Restricted Stock Units vest, although there is information on the choices available to holders of Restricted stock or Stock Units.

9. However, there is an affidavit by Heidi D. Lewis that claims the information in the plan which refers to Stock Units also refers to Restricted Stock Units. But the question arises as to why neither the 2012 LTIP or the Grant Agreements refers to Restricted Stock Units.

10. There is also Amendments to the Stock Units in 2014, 2015, and 2016, which they wish to apply to the Restricted Stock Units

11. Perhaps some of the information in the Long Term Incentive Plan of 2012, which was amended in 2014, is what is applicable here when applied to Restricted Stock Units Grant Agreement, which has never been supplied if it exits.

12. The Paragraph below is from the 2014 Grant Agreement for Stock Units:

6.<u>Withholding of Tax</u>. To the extent that the receipt of the Stock Units results in compensation income to the Employee for federal or state income tax purposes, the Employee shall deliver to the Company at the time of such receipt, as the case may be, such amount of money as the Company may require to meet its obligation under applicable tax laws or regulations, and if the Employee fails to do so, the Company is authorized to withhold from any cash or stock remuneration (including withholding any Stock Units distributable to the Employee under this Agreement) then or thereafter payable to the Employee any tax required to be withheld by reason of such resulting compensation income.

13. The Paragraph below is from the 2015 Grant Agreement for Stock Units which is exactly the same as the paragraph above.

6.<u>Withholding of Tax</u>. To the extent that the receipt of the Stock Units results in compensation income to the Employee for federal or state income tax purposes, the Employee shall deliver to the Company at the time of such receipt, as the case may be, such amount of money as the Company may require to meet its obligation under applicable tax laws or regulations, and if the Employee fails to do so, the Company is authorized to withhold from any cash or stock remuneration (including withholding any Stock Units distributable to the Employee under this Agreement) then or thereafter payable to the Employee any tax required to be withheld by reason of such resulting compensation income.

14. The above paragraphs say:

1. That the Employee shall deliver such amount of money (i.e. cash) as the Company may require to meet its tax obligations resulting from the receipt of Stock Units.

2. If the Employee fails to deliver the cash, the company can withhold from any cash or stock (including Stock Units) required to be withheld for any tax.

15. Stock Units as well as Restricted Stock Units are very similar to Employee Stock units, except the Stock Units and Restricted Stock Units have an exercise price of "zero". Rarely, if ever, are Employee Stock Options, Restricted Stock Units or Stock Units taxed on receipt of the Employee Stock Options, Restricted Stock Units or Stock Units. The ESOs are taxed when exercised and the RSUs and the Stock Units are taxed when they vest.

16. But in these 6. Withholding of Tax paragraphs, it refers to taxes upon receipt of the Stock Units. Nothing refers to Withholding of Taxes when the Stock Units vest, which generally causes a tax liability. So how can an officer or director know how to pay the taxes when the Restricted Stock Units vests and he/she receives the stock, if neither the plan or the grant agreement says anything on that point?

17. But we find on the Form 4s that there were common stock disposed to the issuer allegedly for the taxes. Is there any document that required only the disposition of shares for taxes upon vesting of the Stock Units? The answer is no.

18. So it seems that the officer or director can pay cash or if the officer or director chooses not to pay cash, the officer or director can pay the tax with common stock.

19. Apparently the payment was made with common stock as shown on the Form 4s

20. It must be emphasized that the **only purpose** for the designers of Grant Agreements to give discretion to the officer or director to deliver cash or shares to satisfy a tax liability or an exercise price payment is to allow the officer or director "to unfairly use information, which may have been obtained by the officer or director by reason of his relationship to the issuer."

21. Below is the verbatim Section 16 (b) of the Securities Exchange Act of 1934.

**"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer,** *any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.*

*22. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.*

**23. This subsection shall not be construed to cover** *any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or* **any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."**
---------------------------------------- End of Section 16 (b)


24. Below are the parts of 16(b) that refer to the purpose of 16 (b) and the SEC possible exemptions to 16 (b).

*"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer,........*

*This subsection shall not be construed to cover..........any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."*
-----------------

7

25. This clearly states that the SEC can not exempt transactions that "are comprehended within the purpose of 16 (b)."

26. The inability of the SEC to exempt transactions "comprehended within the purpose of 16 (b)." is certified by the court in the case below:

### United States Court of Appeals, Third Circuit.
### Mark LEVY, Appellant v. STERLING HOLDING COMPANY, LLC; National Semiconductor Corporation; Fairchild Semiconductor International, Inc. No. 07-1849. Decided: October 1, 2008

*According to the statute itself, the purpose of section 16(b) is "preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b). The statute authorizes the SEC to promulgate rules and regulations exempting from liability transactions that are "not comprehended within[this] purpose." Id.; see Levy I, 314 F.3d at 112. Exercising this authority, the SEC has established a number of section 16(b) exemptions. See 17 C.F.R. §§ 240.16b-1, .16b-3, .16b-5 to .16b-8 (codifying SEC Rules 16b-1, 16b-3, and 16b-5 to 16b-8)*

--------------------------------

27. The narrowing of the remedy provided in section 16(b) by interpreting and expanding the exemptions beyond what is allowed in the statute does not comport with the principle of construction enunciated by the:

**28. Supreme Court in Reliance Electric Co. v. Emerson Electric Co. 404 U.S. 418, 92 S. Ct. 596, 30 L. Ed. 2d 575 (1972). There, the Supreme Court clearly set forth that:**

"In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration. The objective standard of Section 16 (b) imposes strict liability upon **substantially all transactions occurring within the statutory time period,** regardless of the intent of the insider or the existence of actual speculation. This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect." Bershad v. McDonough, 428 F.2d 693, 696.

29. And in the same case, the Supreme Court said that:
"To be sure, where alternative constructions of the terms of 16 (b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insider.
---------------------

30. In the 188 pages of Motions and attachments submitted by defendant there is nothing that indicate what the terms were for Restricted Stock units, although there are discretionary choices allowed in the Stock Unit Award Agreement.

31. The initial and main question that is before this court is whether the sale/dispositions are exempt from 16 (b). If the sale/dispositions are not exempt from 16 (b), the recovery by Dynegy is required regardless of what the approval by the Board or a Committee.

32. So the first step in determining whether the transactions are exempted from 16 (b) is to determine whether the transactions are "comprehended within the purpose of Section 16 (b)."

33. If the transactions are found to be not within the purpose of 16 (b), the attorneys for the defendants must then show that the transactions are approved specifically by the Board of Directors or a Compensation Committee as required by  SEC Rule 16 b-3(e), Rule 16 b-3(d)(1) and Note (3) in order to get an exemption.

34 .The American Bar Association, the NY State Bar Association and the SEC expressed their view about what type transactions may be "comprehended or not comprehended within the purpose of Section 16 (b)," when the officer or director is making transactions with the issuer.

35. Attached are exhibits A, B, C, which illustrate the views of the ABA, the SEC and the NY State BA on this question. All three  express their view as to what is "comprehended within section 16 (b)."

36. They all agree that  Equal Footing is required for exemptions

37. Exhibit A. shows that The American Bar Association in a letter to the SEC on August 16, 2004 page 2 paragraph 3  (linked below)

*https://www.sec.gov/rules/proposed/s72704/blsaba081604.pdf*

illustrated what type of dispositions from an officer or director to the issuer should be exempt from section 16 (b) :                        9

*"Whether the transactions are compensatory in nature should be irrelevant to the purposes of Section 16, **because the key consideration of the statute is the absence of the ability to take advantage of the other party on the basis of inside information.**"*

38. The SEC in Exhibit B accepted and adopted the idea that *"**the key consideration of the statute is the absence of the ability to take advantage of the other party on the basis of inside information**" by quoting from the ABA letter the paragraph in the SEC release [RELEASE NOS. 33-8600; 34-52202; 35-28013; IC-27025; File No. S7-27-04] page 11 paragraph 1.*

39. Below is the link to the SEC Release effective August 9, 2005

https://www.sec.gov/rules/final/33-8600.pdf

In the same Release effective August 9, 2005, the SEC also accepted and adopted the paragraph from a letter of the New York State Bar Association to the SEC on August 9, 2004, which is on page 3 paragraph 2. The New York State Bar Association letter is linked below and attached as exhibit 3:

https://www.sec.gov/rules/proposed/s72704/nysba080904.pdf

40. "Rule 16b-3 is entirely consistent with the intent of Congress in enacting Section 16(b), since **it exempts only transactions involving parties on an equal footing from the standpoint of knowledge of inside information**" and " **What is critical is that the Rule does not present the opportunities for the misuse of inside information, which the statute is intended to prevent.**"

---------------------------------------------

41. So the starting point, in determining whether a disposition of equity securities from the officer or director to the issuer can be exempt from section 16 (b) of the 1934 Act, is to determine whether the officer or director has **equal standing** with the issuer regarding insider information and its use in making such transactions.

42. A clear example of an officer making a disposition to the issuer that is **"comprehended within the purpose of section 16 (b)"** (and can not be exempted) is when the officer or director has discretion to deliver cash or shares for the payment of a tax liability from vesting of restricted stock units and the issuer must accept the officer's decision.

43. Clearly the officer or director has superior footing since the officer or director can use inside information but the issuer can not use the inside information.

**44. The above is exactly the circumstances we find here with Dynegy Inc.**

In the example above, the officer or director could choose to pay with stock when the officer had negative inside information about future company announcements, but could pay with cash when the officer had positive inside information about future announcements. In these cases the issuer was required to accept the discretionary dispositions by the officer or director. In similar cases, the dispositions to the issuer were transactions with the issuer where the officer had superior footing.

45. This situation applies generally when the officer or director has discretion as to whether the officer or director delivers shares to the issuer upon the vesting of RS, RSUs, and Performance Shares.

46. It is 100% clear that the officer or director can deliver cash to the company for the required tax withholding, or if the officer or director chooses not to deliver cash, the issuer Dynegy Ind may withhold cash or stock.

47.  If the officer or director does not have discretion as to how to pay the tax liability (which is not the case here) or the exercise price and the disposition to the issuer is not "comprehended within the purpose of Section 16 b.", an exemption from section 16 (b) is available if the approval requirements in SEC Rule 16 b-3(e), Note (3) and SEC 16 b-3(d)(1)  are met.

48. Those Rules are below:

**§ 240.16b-3 Transactions between an issuer and its officers or directors.**

*(a) General. A transaction between the issuer (including an employee benefit plan sponsored by the issuer) and an officer or director of the issuer that involves issuer equity securities shall be exempt from section 16(b) of the Act if the transaction satisfies the applicable conditions set forth in this section.*

49. Below is SEC Rule 16 b-3(e).

*(e) Dispositions to the issuer. Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.*

50. Below is SEC Rule 16 b-3(d)(1) and (2)

***(d) Acquisitions from the issuer.*** *Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:*

*(1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;*

*(2) The transaction is approved or ratified, in compliance with section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote;* ***provided that*** *such ratification occurs no later than the date of the next annual meeting of shareholders;*

51. Below is Note (3)

**Note (3):**
*The approval conditions of paragraphs (d)(1), (d)(2) and (e) of this section require the approval of each specific transaction, and are not satisfied by approval of a plan in its entirety except for the approval of a plan pursuant to which the terms and conditions of each transaction are fixed in advance, such as a formula plan. Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval.*

---

52. In addition the SEC staff has stated that when the issuer had discretion to accept the decision to deliver shares, there is no exemption from section 16 (b) pursuant to SEC Rule 16 b-3(e) as illustrated below.

**Q and A # 123.16  to and from Staff of the SEC and analysis by Romeo and Dye**

**Question: Would approval of a grant that by its terms provides for automatic reloads satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants?**

12

**Answer: Yes. Approval of a grant that by its terms provides for automatic reloads would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis.**

**The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right. [May 23, 2007]**

53. Romeo and Dye expressing their views about the above Q and A:

**(6) Issuer Discretion To Disallow Stock Withholding, Surrender, Or Delivery May Call Into Question Availability Of Rule 16b-3(e)**. The staff (of the SEC) has taken the position that a net exercise or tax withholding transaction that is subject to issuer discretion would require specific approval of individual transaction in order for the Rule 16b-3(e) exemption to be available.

54. See *Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms*, Q. 123.16 (May 23, 2007). Apparently the staff is concerned that the issuer's discretion means the board or committee delegated to management the decision whether to approve withholding, rather than making the decision itself.

55. Issuers might consider assuring the availability of the exemption by
 (i) eliminating the discretionary feature and making the right entirely elective on the part of the insider,
(ii) having the administering committee adopt a resolution providing that withholding is permissible unless the committee (not management) concludes that it should not be permitted in a particular case, or
(iii) having the committee establish clear guidelines for management's disallowance of withholding, so that the decision by management is ministerial rather than discretionary.

---------------------------------------------------------------

13

## Summary

56. There was no advance approval of any specific transaction.
The Plan does not have terms and conditions that are fixed in advance
The terms and conditions of the subsequent transaction (i.e. the dispositions to the issuer for taxes) were not initially approved in advance.

57. The issuer had discretion to accept or deny cash or shares as payment to satisfy the tax withholding requirement. So for several reasons there was no exemption from 16 (b) achieved by any of the officers or directors here.

### 58. Requirements under FRCP 12 b-6

"The **general rule** in appraising the sufficiency of a complaint for failure to state a claim is that a **complaint should not be dismissed '\*\*\*unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.**' CONLEY VS. GIBSON (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2 L Ed 2d 80;

59. The plaintiff here has demonstrated that all defendants were officers or directors and thus subject to Section 16 (B). It has been demonstrated that there were purchases of common stock and sales of common stock by officers and directors that were not exempt from 16 b. The purchases and sales were within less than 6 months of each other and created profits. The profits are recoverable by the issuer, Dunergy.

60. There were no exemptions from Section 16 (b) for any of the purchases or sales

Respectfully Submitted

*/s/ J.D. Jordan*

J.D. Jordan
Box 23866
New Orleans, La 70183
504-737-385
jdsgold@gmail.com

Dated this ..1ST..of March 2017

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2017, a copy of the foregoing document was filed in U.S District Court. I also hereby certify that a copy of the foregoing document was Served on the interested parties by U.S First Class mail to the following address

Tre Fisher
Jackson Walker L.L.P
1401 McKinney
Suite 1900
Houston, Texas 77010

_____
J.D Jordan